# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| EDMUND AND BRENDA HOBDY, | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-13-3065 |
| | § | |
| INTERNATIONAL LONGSHOREMEN'S | § | |
| ASSOCIATION, I.L.A. GULF DISTRICT, | § | |
| AND ALAN A. ROBB, INDIVIDUALLY, | § | |
| *Defendants*. | § | |

## SUMMARY JUDGMENT OPINION

This RICO case is before the court on defendants' motions for summary judgment (Dkts. 25, 30). Having considered the parties' submissions, the evidence of record, and the law, the motions are granted and this case is dismissed with prejudice.

## Background

Edmund Hobdy, known as "Mack," is a member of ILA Local 1351. In 2007, Hobdy began working for a stevedoring company, Terminal Link, as Clerk in Charge (CIC) at the Bayport Container Terminal at the Port of Houston. He retired from that position in 2012.

During his time as CIC, Hobdy had a side business buying and selling shipping containers from CMA-CGM, a shipping line affiliated with Terminal Link that owns and stores shipping containers at the Terminal Link yard. Hobdy and his wife, Brenda Hobdy, also ran a trucking company called MMR Express that hauled shipping containers from place to place.

Alan Robb is, and was in 2010, ILA District Representative for the South Atlantic and Gulf Coast District. Hobdy alleges that in early 2010, Alan Robb solicited financial

contributions from him four times. Hobdy alleges that on the fourth occasion, Robb said "You can do better than that," and "I know what you are doing." Hobdy felt Robb was "strong-arming" him.

Around the same time, ILA Local 28 filed a grievance against Terminal Link because damaged containers were placed on ships. It was the job of Local 28 members to repair damages containers, and this was costing them jobs. A step-one grievance meeting was held on February 3, 2010. Representatives from Terminal Link, Local 28, other local ILA chapters, West Gulf Maritime Association, and Alan Robb attended the February 3 meeting. Hobdy alleges that Robb used that meeting to try and get Hobdy fired. Robb denies that. Notes from that meeting indicate that Robb did bring up Hobdy's side business of buying and selling containers and questioned whether it created a conflict of interest. Hobdy was not fired or in any way disciplined as a result of this grievance.

Shortly thereafter, Brenda Hobdy called Mack Hobdy at work to report that their trucking businesses had been "cut-off" by CMA-CGM. Hobdy spoke to various CMA-CGM representatives to find out what happened. Hobdy was told that Joel Haka made the decision. Hobdy believes that Alan Robb was behind it.

Hobdy alleges a few other misdeeds by Robb -- taking barbeque grills made on Terminal Link time; having damaged containers repaired on Terminal Link time; and getting jobs at Terminal Link for a friend's relatives. Again, Robb denies these allegations.

Hobdy originally brought suit against ILA Gulf District and Alan Robb in state court. Defendants removed it to federal court because Hobdy sued under the federal Racketeer

Influenced and Corrupt Organizations Act (RICO). Robb and ILA Gulf District now move for summary judgment.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).

If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

**Analysis**

Section 1964(c) of the RICO statute creates a civil cause of action for any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962. To state a civil RICO claim under § 1962, "there must be: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003). Hobdy

has no evidence that Robb or ILA Gulf District engaged in a "pattern of racketeering activity," nor that a RICO "enterprise" existed.

***No pattern of racketeering activity.*** Plaintiffs allege defendants engaged in racketeering activities as defined in 18 U.S.C. § 1961 through acts of bribery, retaliation, interference with commerce, and monetary transactions in property derived from unlawful activity.[1] Dkt. 34 at 2. A pattern of racketeering activity requires proof of related predicate acts that pose a continuing threat of criminal activity. *Brown*, 353 F.3d at 407; *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 239 (1989). The statute requires at least two predicate acts, 18 U.S.C. § 1961(5), but "the implication is that while two acts are necessary, they may not be sufficient. Indeed in common parlance two of anything do not generally form a pattern." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 486 n.14 (1985).

Hobdy testified that on four occasions in early 2010 Robb solicited funds from him in amounts ranging from $20 to $150. *See, e.g.*, Dkt. 34-1 at 7, 11. Robb says he only remembers asking Hobdy to buy a raffle ticket for a pickup truck to benefit the Raspberry Scholarship Fund. Dkt. 34-1 at 54. Any factual dispute regarding the number of solicitations is immaterial, because Hobdy admits he has no evidence that the solicitations were for Robb's own benefit. Dkt. 34-1 at 12, 22. Other than Hobdy's own subjective belief, there is also no

---

[1] Defendants argue that the amended complaint should be dismissed for failure to plead with particularity which RICO sections or subsections defendants violated. The court declines to dismiss on the pleadings alone, mooting any motion by plaintiffs for leave to amend, *see* Dkt. 17, because the failure to create a genuine issue of material fact as to the existence of a pattern of racketeering activity or enterprise dooms any RICO theory they might plead.

4

evidence that these solicitations were in any way related to the other activities Hobdy describes. *See* Dkt. 34-1 at 10 ("I took it as a threat.").

Hobdy's other allegations are based on speculation and hearsay.[2] Hobdy says that Terminal Link representatives Greg Linbeck, Brian Bauer, and William Barrett told him Robb was "throwing him under the bus" at the February 3, 2010 meeting. Dkt. 34-1 at 23-26. But Hobdy was not at that meeting ( Dkt. 34-1 at 24), and has no first-hand knowledge of what happened. Linbeck, Bauer, and Barrett have not given testimony under oath in this case to support Hobdy's assertion. The notes from the meeting reflect a discussion of Hobdy's side business, but do not indicate that Robb suggested Hobdy should be fired. Dkt. 34-1 at 92-93.

As to the destruction of Hobdy's trucking business, Hobdy relies on conversations he had with Jim Poma, Michelle Beach, and Hans Witherspoon to support his assertion that Robb had something to do with the decision. Dkt. 34-1 at 26-29. There is no evidence that Poma, Beach, or Witherspoon have first hand knowledge of the reason Joel Haka decided

---

[2] As to workers fixing damaged containers, he does not know whether it is true that the work was done for Robb, only that one time Al Stevens said so, and he does not know whether Robb got any money from the activity. Dkt. 34-1 at 14, 21. Hobdy does not know whether Terminal Link approved Robb's getting a barbeque pit. Dkt. 34-1 at 16. As to workers getting hired "out of seniority," Hobdy characterized it as a coincidence, and testified:

Q: [I]s it your testimony that Martin Jr. and Martin's son-in-law were referred out of seniority to Terminal Link?

A: I'm just saying they were at Terminal Link and they had very little or no seniority; another coincidence.

Q: Okay. Does that have anything to do with your lawsuit?

A: No.
Dkt. 34-1 at 20, 23.

5

CMA-CGM should stop doing business with Hobdy. In fact, Beach told Hobdy she did not know the reason other than it was a "Houston problem" (Dkt. 34-1 at 28). Hobdy never asked Witherspoon whether Robb had anything to do with the business being terminated by CMA-CGM (Dkt. 34-1 at 29). And Hobdy never spoke with Joel Haka. *Id.* Poma, Beach, Witherspoon, and Haka have not provided any testimony in this case to support Hobdy's position. Defendants are entitled to summary judgment because plaintiffs have no evidence they engaged in a pattern of racketeering activity.

*__No enterprise__*. A RICO enterprise is a "group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Proc. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). The RICO "enterprise" must be distinct from the RICO "person." Hobdy does not have any knowledge of anybody other than Robb involved in the alleged RICO enterprise. Dkt. 34-1 at 22.

An enterprise can be either a legal entity or an association-in-fact. *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). An association-in-fact enterprise must (1) have an existence separate and apart from the pattern of racketeering; (2) be an on-going organization; and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure. *Id.* The court has found no evidence of a RICO enterprise in the record. Indeed, plaintiffs do not even address this element of their RICO claim in their

summary judgment briefing.[3] Defendants are entitled to summary judgment because plaintiffs have no evidence of the existence of a RICO enterprise.

## Conclusion

For the reasons discussed above, defendants' motions for summary judgment are granted. Plaintiffs' claims against defendants in this case are dismissed with prejudice.

The court will issue a separate final judgment.

Signed at Houston, Texas on December 17, 2014.

Stephen Wm. Smith
United States Magistrate Judge

---

[3] Plaintiffs also do not address tortious interference with contract or breach of fiduciary duty claims addressed in defendants' motions. Plaintiffs' response indicates they are suing only under RICO statutes. Dkt. 34 at 2. To the extent claims for interference with contract or breach of fiduciary duty were pled, they are dismissed.